THE CHICAGO, KANSAS & WESTERN RAILROAD COMPANY v. MORRIS D. BOCKOVEN, as *Administrator of the estate of Ernest Bockoven, deceased.*

1. DANGEROUS PREMISES—*Injury to Child—Liability.* Where a railroad company had recently built stock yards on the outskirts of a little town containing a population of about 100 people, which were not located upon any traveled wagon road, but 200 yards from the main street of the town, and with only two or three houses in the neighborhood, the nearest being distant between 100 and 150 yards, which stock yards were fully inclosed and had safe and secure gates through which to enter, but upon the inside there was a defective gate in a dangerous condition, if any weight was brought to bear upon it, such company would not be liable for the death of a child, (whose parent lived in plain view of the yards, and as close to them as the depot of the company,) caused by the falling of such defective inside gate, while the child was playing or swinging upon it, although the company knew that children played in the vicinity or on the outside of the yards, if the child injured, in order to play or swing upon the inside gate, entered the stock yards without the consent or knowledge of the railroad company by climbing over an outside gate for the purpose of playing or swinging on the inside gate.

2. RAILROAD COMPANY — *Negligence* — *When Liable.* Under certain circumstances, the railroad company might be liable on the ground of negligence for the death or personal injury of a child of tender years from the falling of a defective inside gate of the stock yards. If the company consented to or had knowledge that children frequently climbed over the outside gate or inclosure of the yards to play or swing upon a defective and dangerous inside gate, and took no means to keep children away, and no means to prevent accidents; or if, with the knowledge that children of tender years were in the habit or practice of resorting to the vicinity of the stock yards for play, the outside gate of the yards was left open by the railroad company at the time of the injury; or, if opened without its authority, it was negligently permitted to remain open, so that children might enter and play.

## *Error from Pratt District Court.*

ON the 27th day of July, 1889, *Morris D. Bockoven*, administrator of the estate of Ernest Bockoven, deceased, commenced his action against *The Chicago, Kansas & Western Railroad Company* to recover $10,000 damages for the wrongful acts and omissions of the railroad company in causing the death of Ernest Bockoven, a child of about five years of age. The petition alleged, among other things, that at the station of Sawyer, in Pratt county, the railroad company had stock yards along the line of its road near to the depot, and also near to the business portion of the town, surrounded by dwelling houses, and which had been and was a place where children of tender years were permitted by defendant to play; that in the stock yards there was a gate so insecurely constructed and kept as to be dangerous and unsafe if moved or touched; that on the 10th of September, 1887, Ernest Bockoven wandered away from his home to the stock yards and climbed upon the gate, which fell over and upon him, inflicting injuries, causing his death. Trial at the February term for 1890, before the court with a jury. The jury returned a verdict for the plaintiff for $8,000, and also answered the following special questions, submitted by the defendant:

"Ques. Did the boy injured go into the stock yards by direction of the defendant, or with its knowledge or consent? Ans. No.

"Q. What, if any, knowledge did the defendant have of the presence of the children in the stock yards at the time of the injury complained of? A. None shown by evidence.

"Q. How did the children cause the gate to fall? A. The gate fell by not being properly fastened at the top.

"Q. Did the defendant company, by any wanton or willful act, cause the injury complained of? A. Only by negligence.

"Q. Did the gate causing the injury fall by reason of the acts of children swinging thereon? A. It fell by reason of deficiency in hanging.

"Q. Was the proximate cause of the injury the fact that the children swung on the gate? A. Was by reason of its deficient construction.

"Q. Was the gate causing the injury differently constructed from the stock-yard gates of the defendant company generally? A. No.

"Q. Was the gate causing the injury an outside or inside gate? A. Inside gate.

"Q. How did the children, one of whom was injured, get such inside gate open so they could swing on it? A. No testimony to show.

"Q. Did the children, one of whom was injured, while swinging on the gate, test its strength and capacity more than it would ordinarily be tested in its ordinary use as a stock-yard gate? A. No.

"Q. What business, if any, did the children have in the yards at the time of the injury? A. Went there to play.

"Q. Were the yards of the company left in the condition they were in with any desire or design to injure any person? A. No.

"Q. At the time of the injury, were the outside gates of the yards in question found to be open or closed? A. Children entered and closed it.

"Q. Did the children, one of whom was injured, climb down from the top of the yards to go to swing on the gate which caused the injury? A. Yes.

"Q. How long had the children, one of whom was injured, been playing on the top of the yards before they climbed down into the yards, and commenced swinging on the gates? A. Short time.

"Q. Were such children, when playing on the yards, in plain sight of the parents of the child injured? A. No; they were in the house.

"Q. Did the parents object? A. No.

"Q. What time in the day did the accident occur? A. About noon.

"Q. Was the mother of the injured child as close to the yards of the company at the time of the injury as the agent of the company at the depot? A. Yes.

"Q. How many people lived in the town of Sawyer at the time of the injury complained of? A. About 100.

"Q. Were the stock yards located upon any traveled wagon road? A. No evidence to show that it was.

"Q. What do you estimate the value of the service of this injured child from the time of death to the age of 21 years? A. We allow for the child as a whole.

"Q. What do you allow for his care and maintenance during such period? A. For maintenance, we make no allowance.

"Q. What damages do you allow in your general verdict as a matter of punishment to the defendant? A. None.

"Q. Did C. C. Figgins, agent of the defendant at Sawyer, close the outside gates of the stock yards after the last time they were used by defendant before the injury? A. He did.

"Q. Was not this the evening before the injury? A. Yes.

"Q. When were these yards constructed? A. A short time before the accident.

"Q. Was the ground around the post upon which the gate swung, by reason of recent construction, more liable to allow the gate to settle on that account when the weight of the children came upon it? A. It was liable to fall at any time.

"Q. If you find from the evidence that after the outside gates were closed the night before by Figgins they were opened so as to be open when the children entered the yards, state who opened them, and whether they were opened by authority of defendant. A. Evidence does not show.

"Q. How many people lived in the town of Sawyer north of the railroad and west of Main street? A. Don't know.

"Q. How far west of Main street on the north of the track was the stock yards of defendant? A. About 200 yards."

Judgment on the verdict for the plaintiff. The railroad company excepted, and brings the case here.

*A. A. Hurd,* and *Robert Dunlap,* for plaintiff in error:

The defendant is entitled to judgment on the special findings, and the evidence is insufficient to establish a liability. It is a rule established beyond controversy that the owner of premises is under no obligation, to one entering the same without his permission or consent, to see that his premises are safe so that injury does not occur. Those who enter the premises must take them as they find them. If they are defective, and the trespasser is injured by reason of such defect, it is not the fault of the owner, because the owner has not induced or invited such a party to enter, or held out to such party the implied assurance that he may safely enter, and a trespasser has no legal right to go upon his premises. See Bish. Non-Cont. Law, § 845; Whar. Law of Neg., § 351. Indeed, there exists no such duty even as to a licensee. *Mason v. Mo. Pac. Rly. Co.,* 27 Kas. 84, 87, 88; *Faris v. Hoberg,* 33 N. E. Rep. 1028; *Lachat v. Lutz,* 22 S. W. Rep. 218; *Matthews v. Bonsee,* 16 Atl. Rep. 195; *Pierce v. Whitcomb,* 48 Vt. 127; *Morrisey v. Railroad Co.,* 126 Mass. 377; *Balch v. Smith,* 7 H. & N. 736; *Bundick v. Chatdle,* 26 Ohio St. 393; *Railway Co. v. Bingham,* 29 id. 364; *Lary v. Railroad Co.,* 78 Ind. 323.

If a minor trespasses upon land and is injured, he can only recover by showing that the injury was wanton or willful. *K. P. Rly. Co. v. Whipple,* 39 Kas. 532–539. There exists no duty as to him to keep the premises safe. See *L. & N. Rly. Co. v. Hurt,* 13 S. W. Rep. 275; *Penna. Rld. Co. v. McMullin,* 19 Atl. Rep. 27; *Mitchell v. P. W. & B. Rld. Co.,* 19 id. 28; *Curley v. Mo. Pac. Rly. Co.,* 10 S. W. Rep. 593; *O'Connor v. Ill. Cent. Rld. Co.,* 10 S. Rep. 679. See, also, Whar. Law Neg., § 344; *Mangan v. Atterton,* L. R. 1 Exch. 239.

It is sought, however, to bring this case within what is known as the "turntable case," and it is sought to extend that case an unreasonable length. In the case of the *K. C. Rly. Co. v. Fitzsimmons,* 22 Kas. 686, it was held by this court that where a turntable was negligently left in a public place, unlocked and unguarded, and where a boy was injured

by reason of the same, the question as to whether the defendant was negligent or not, and whether the plaintiff was guilty of contributory negligence, were questions of fact. In that case, it would seem that stress was laid upon the fact that the turntable was in a public place, upon an unoccupied sort of common, where the boys and others might well suppose they would have had a right to go without being considered as trespassers. The Fitzsimmons case cites for its support but two authorities: *Railroad Co. v. Stout*, 17 Wall. 657, and *Keffe v. M. & St. P. Rly. Co.*, 21 Minn. 207. These cases are a clear departure from well-settled principles, and we will show that there is no disposition on the part of the courts to extend them at all.

In *C. B. U. P. Rly. Co. v. Henigh*, 23 Kas. 347, the railroad company had placed a flat car upon a side track and on a grade, fastened merely with the ordinary hand brakes, and a boy four years old got upon the same and started it in motion and was killed. It was held that the railroad company was not liable. See, also, *A. T. & S. F. Rld. Co. v. Plaskett*, 47 Kas. 107; *McEachern v. B. & M. Rld. Co.*, 23 N. E. Rep. 231; *Daniels v. N. Y. & N. E. Rld. Co.*, 28 id. 283. Upon the same point will be found a clear and logical opinion of the supreme court of New Hampshire, in the case of *Frost v. Eastern Rld. Co.*, 9 Atl. Rep. 790. In that case it is held that one is under no duty to a mere trespasser to keep his premises safe, though the latter is an infant. There the infant was injured on a turntable.

In *Gillespie v. McGowan*, 100 Pa. St. 144, it appeared that a boy under eight years of age was drowned by falling into a well upon a lot in the outskirts of the city of Philadelphia. The nearest road was 80 feet from the well. The well was uncovered, but was not fenced around, nor was the lot in which it lay; and this was a common place of resort for children and adults. It was held that he was a trespasser, and that the lot owners had not been guilty of any such negligence as would render them liable for his death. See, also, *Charlebois v. G. & M. Rld. Co.*, 51 N. W. Rep. 812; *Mur-*

*ray v. R. & D. Rld. Co.*, 33 Alb. L. J. 92, 93; *Nolan v. N. Y. & N. H. Rld. Co.*, 25 Am. & Eng. Rld. Cas. 342; *Mitchell v. P. W. & B. Rld. Co.*, 19 Atl. Rep. 28; *C. & A. Rld. Co. v. Becker*, 76 Ill. 26; *Crystal v. T. & B. Rld. Co.*, 105 N. Y. 164.

The verdict is excessive. The plaintiff in this case could only recover for the loss of services during the minority of the deceased less the expense or cost of maintenance. It was error in the court to give a vague and general instruction, and not properly limit the consideration of the jury to the true rule. The jury were at liberty to conjecture and to roam in a broad and unlimited field, under the instruction given. See *McGowan v. St. L. Ore and Steel Co.*, 19 S. W. Rep. 199, 203; *B. & O. Rld. Co. v. Carr*, 17 Atl. Rep. 1052, 1054; *Knight v. Edgerton*, 7 Exch. 407; *Hadley v. Baxendale*, 9 id. 354. See, also, *A. T. & S. F. Rld. Co. v. Brown*, 26 Kas. 443, 457, 458; *Cooper v. L. S. & M. S. Rly. Co.*, 66 Mich. 261; *The State v. B. & O. Rld. Co.*, 24 Md. 85.

*N. B. Carskadon*, and *J. G. Waters*, for defendant in error:

We contend that the defendant is liable, on the ground that it negligently left the yards and the gate causing the injury in a dangerous condition, in a town of 100 inhabitants, not more than 200 yards from the main street.

Here was a railroad company that had just completed a new line of road through a treeless prairie country, and a town of 100 or more inhabitants; stock yards are built of massive, heavy timbers, right where the children are likely to resort, and, to the company's knowledge, do resort for play. The dangerous machinery presents to any person — child or man, for that matter — an appearance of strength and stability. The defect is, you might say, a hidden one, so much so, at least, that the agent in charge deemed it necessary to call the attention of an adult to the danger. Its dangerous condition is in no way necessary to its use for the purpose for which it was erected. It is left in an unguarded place with no attendant.

The Fitzsimmons case has not been limited in this state,

nor can it be limited by any sort of logical humane reasoning. All the cases wherein the plea of trespass (so-called) has been held to be a defense will, on examination, be found to be cases either, first, where all precaution has been taken to guard against the danger; or, second, where the danger was necessarily attendant on the carrying on of the business in which the injury occurred, as in the cases of *C. B. U. P. Rld. Co. v. Henigh,* 23 Kas. 347, and *A. T. & S. F. Rld. Co. v. Plaskett,* 47 id. 107. In both of these cases the defendants were engaged in the transaction of business, the nature and danger of which everyone knows and is necessarily attendant upon the business.

The cases of *Frost v. Railroad Co.,* 9 Atl. Rep. 790, and *Gillespie v. McGowen,* 100 Pa. St. 144, cited by plaintiff in error, are both based on the "fruit-tree" and "blueberry-patch" reasoning.

For some of the cases that have held defendant liable for leaving unguarded on his premises contrivances dangerous to the safety of trespassing children whose presence could be reasonably foreseen, see *Lynch v. Nurden,* 1 Q. B. R. 29; *S. C. & P. Rld. Co. v. Stout,* 84 U. S. 657; 2 Dill. 294; *Stokes v. Satterstal,* 13 Pet. 181; *Birge v. Gardner,* 19 Conn. 507; *Dailey v. N. & W. Rld. Co.,* 26 id. 591; *Keffe v. M. & St. P. Rld. Co.,* 21 Minn. 207; 43 id. 289; 32 id. 133; *Mackey v. City of Vicksburg,* 64 Miss. 777; 67 id. 4; *G. C. & S. F. Rld. Co. v. Styron,* 66 Tex. 421; *G. C. & S. F. Rld. Co. v. McWhirter,* 77 id. 356; *Ferguson v. C. & R. Rly. Co.,* 75 Ga. 637; *Bransom's Adm'r v. Tabrot,* 81 Ky. 638.

See, also, *Harriman v. Railway Co.,* 45 Ohio St. 11, and the Kansas cases, *K. C. Rly. Co. v. Fitzsimmons,* 22 Kas. 687, which is decisive of this case, and affirmed in *U. P. Rly. Co. Dunden,* 37 Kas. 1.

The fourth contention of the plaintiff in error is, that "The verdict is excessive, and that the instructions on the measure of damages are erroneous." The court instructed the jury with the case of *U. P. Rly. Co. v. Dunden,* 37 Kas. 1, before it, and in full accord with that decision. The verdict was a

liberal one, but the answers to the special questions show that there was neither passion nor prejudice on the part of the jury against the defendant.

The opinion of the court was delivered by

HORTON, C. J.: In support of the judgment, the cases of *Railway Co. v. Fitzsimmons*, 22 Kas. 686, and *Railway Co. v. Dunden*, 37 id. 1, are cited as decisive. In the first case, it is stated in the opinion that the turntable "was left without locks or fastenings, and without being watched or guarded, or even fenced in." In the other case, it was expressly alleged and proved upon the trial that the turntable "was near a public highway, in an open common, where people frequently and customarily passed, and where boys often played, with the knowledge of the railway company, and that the turntable was not locked, fastened, or fenced in." These cases follow *Railroad Co. v. Stout*, 84 U. S. 657. In that case, the turntable was also near a traveled road, in an open space, not in any way inclosed. There it was shown that the boys had, previously to the injury complained of, played upon the turntable in sight of the railroad employés not far distant. In this case, the defective gate which fell, causing the death of the little boy, was inside of the stock yards, not an outside gate. For anyone to play or swing upon the inside gate, it was necessary to go through an outside gate or climb over the fence or inclosure of the stock yards. The jury specially found that the boy did not go into the stock yards by the direction of the company, or with its knowledge or consent. They further found that the agent had closed the outside gate on the evening before the injury, and no evidence was offered tending to show that it was afterwards opened by the authority of the company.

The preponderance of the evidence is to the effect that the outside gate was closed at the time of the injury, and that the boys swinging upon the inside gate went into the stock yards by climbing over an outside gate. The evidence of Johnnie Young, a little boy about eight years old, who was with Er-

nest Bockoven swinging on the inside gate at the time it fell, introduced to prove that the outside gate was open on the morning of the injury, is very unsatisfactory. He testified "that he and Earnest went into the stock yards when the outside gate was opened; that they walked right through the gate." Upon cross-examination, he testified "that they climbed over the gate going in; that he climbed over the fence of the stock yards going out," and that he told Harding, the depot agent, "that the outside gate was closed." Upon re-examination he said "he went into the gate, and then climbed up on the fence." Harding testified that Young told him "he didn't go in the gate because it was closed." There was no finding of the jury that children, with the knowledge of the company, were in the habit of climbing over the outside gate or inclosure of the stock yards for the purpose of playing or swinging upon the inside gate or fence. Evidence was offered to show that the outside gate was usually left open. When objection was made to the introduction of this evidence, the counsel for plaintiff below stated "that the object was to prove negligence in leaving the outside gate open and the inside gates in the condition they were." This evidence was admitted, and was then attempted to be followed up by the further evidence of Johnnie Young, that the gate was open on the morning the little boy was killed, and that the boys went into the stock yards through the open gate.

We are not willing to extend the rule declared by this court in the Fitzsimmons and Dunden cases. In some of the courts, the rule in those cases has been questioned, and in others denied. We think if the stock yards within which the little boy was killed had a sufficient fence or inclosure around them, with safe and secure outside gates, and the boys reached the inside gate, which subsequently fell, by climbing over the outside gate, or any other part of the inclosure, there would be no liability upon the part of the railroad company. If, with the consent or knowledge of the railroad company, children frequently climbed over the outside gate or inclosure of the stock yards,

1. Dangerous premises—injury to child—liability.

and played or swung upon the inside gate, in a defective and dangerous condition, under certain circumstances, such negligence might be established as to create a liability for any injury resulting to such children from a gate knowingly left in a dangerous condition.   If the outside gate was generally left open, in consequence of which children frequently went inside of the yards and played or swung on the defective inside gate, and all of this was with the consent or knowledge of the company, and if on the morning that the little boy was killed, the outside gate was open, and the boys entered the yards through the open gate, a liability might rest upon the company, if the parents were not negligent in suffering the boy to be exposed to such danger.   If the railroad company had knowledge that little children frequently played in the vicinity or around the stock yards, and if the outside gate was open upon the morning of the injury, without the authority of the railroad company, the question might arise whether, after being opened, it was negligently permitted to remain open.

*2. Railroad company— negligence— when liable.*

An open door or gate to an inclosure or other premises where children frequently play would be very apt to excite their curiosity, and is something in the way of a permission or an invitation to enter such inclosure or premises, and a little boy in going through an open gate or door around which he is playing would be indulging in the natural instinct of a child.   On the other hand, an inclosure with safe and secure gates which are closed is a bar or prohibition for anyone to enter within.   It does not appear from the evidence that little children could open the outside gate of the stock yards when closed or shut.   Where an action for a negligent injury to an infant is brought by the parent, it is very justly held that the contributory negligence of such parent may be shown in bar, (Beach, Contrib. Neg., 2d ed., § 131,) but it is otherwise if the action is brought by the infant or by a next friend for the benefit of the infant. (4 Am. Law Rev. 405, and cases cited.)

The jury were asked, "At the time of the injury, were the

outside gates of the yards found to be open or closed?" The answer was, "Children entered and closed it." This was not a direct answer. It was evasive. There was testimony bearing directly upon the question submitted, and it should have been answered fairly by the jury. As we view the case, it was important to determine in what manner the boys reached the inside gate which fell. Upon the findings of the jury, if the stock yards were properly inclosed, and the outside gate sufficiently safe and secure when the boys entered the yards, there was no negligence on the part of the company to render it liable. If it were proved that on one occasion only, prior to the injury, children were in the stock yards and were ordered away at once by the company or its agent, and under such direction left the yards, that of itself would not establish knowledge on the part of the company of any habit or practice of children resorting to the yards for play. We differ with counsel in the assertion that it is immaterial whether the gates of the fence or inclosure were shut or not, when the boys entered the yards, unless, with the knowledge and consent of the railroad company, children frequently climbed over the outside gate or inclosure to play or swing upon the inside gate. An examination of the numerous cases referred to in the brief to sustain the judgment, with the exception of the injuries committed intentionally by traps or spring guns, which are not applicable, shows that the dangerous machines or places complained of were uninclosed and semipublic, or were reached through doors or gates left open, or were on public highways or passways, which the public were permitted to use.

Among the special findings of the jury were the following:

"Ques. What do you estimate the value of the service of this injured child from the time of death to the age of 21 years? Ans. We allow for the child as a whole.

"Q. What do you allow for his care and maintenance during such period? A. For maintenance we made no allowance."

The damages were assessed by the jury at $8,000. Where

the death of one is caused by the wrongful act or omission of another, the statute provides that the damages cannot exceed $10,000. (Civil Code, § 422.) If the railroad company causes, by its wrongful act or omission, the death of an adult, leaving a widow and children, only $10,000 could be recovered for the benefit of the family. Considering this provision of the statute, the age of the little boy who was killed, and the special findings of the jury, the verdict is excessive. All of the probable or possible pecuniary benefits from the continued life of the boy until he should reach his majority seem to have been allowed, but none of the burdens for his support during his tender years seem to have been deducted or considered.

The request that this court give the plaintiff below the option to remit any excessive damages and allow judgment to be taken for the residue cannot be granted, because, until the case is properly tried and the issues fairly decided, the court cannot say, as a matter of law, upon the conflicting evidence, that the plaintiff below is entitled to recover.

The judgment of the district court will be reversed.

All the Justices concurring.