THE UNION PACIFIC RAILWAY COMPANY v. CLARENCE E. YOUNG, *by* LUELLA YOUNG, *his Next Friend.*

8644.

1. INJURY TO CHILD — *Evidence Insufficient.* A child about three years old was injured by a freight-train which had been standing near the home of the child for some time prior to the injury, and brought an action against the railroad company to recover for the injury, alleging that proper precautions were not taken to prevent the same. No one saw the injury inflicted, and the testimony did not show how the child came to be near the track or what its position was immediately prior to the injury. *Held*, that the evidence was insufficient to sustain the verdict.

2. ——— *Negligence of Parents.* In an action for negligent injury brought by an infant, too young to be charged with contributory negligence, for his own benefit, the negligence of the parents, if any, cannot be imputed to the infant.

3. ——— *Financial Condition of Parties.* It is not proper for the court in charging the jury to call attention to the financial circumstances of the parties to the action where their condition has no bearing upon the care to be exercised and cannot affect the measure of recovery of the plaintiff.

4. ——— *Improper Instructions.* It is improper to charge the jury upon grounds of recovery, where the testimony does not support such grounds.

*Error from Wyandotte Court of Common Pleas.*
*Hon. T. P. Anderson, Judge.*

Reversed and Remanded.        Opinion Filed July 11, 1896.

*A. L. Williams, N. H. Loomis,* and *R. W. Blair,* for plaintiff in error.

*Dail & Bird,* and *A. F. Smith,* for defendant in error.

The opinion of the court was delivered by

Johnston, J.: Clarence E. Young, a minor about three years old, had his hand cut off by one of the trains of the Union Pacific Railway Company, in Kansas City, on November 4, 1888. He brought an action by his next friend, alleging that near the track were several houses occupied by families with children; that the track was not often used by the company, was very attractive and enticing to children, and, therefore, it was necessary for the company in moving cars to keep a careful lookout and guard over the track to prevent injury to children who were on or near to the track. It was further alleged that, while the plaintiff was playing upon the track near the end of the train of cars, it was moved backward without any warning to him, or any precaution to prevent accidents to children upon the track; and that by reason of negligence, in failing to keep a lookout or proper guard, the injury occurred. The trial resulted in a verdict against the company awarding damages in the sum of $5,000, and upon motion for a new trial it was insisted that the verdict was not sustained by sufficient evidence; and that is the principal contention in this review.

It appears that the train was upon a switch-track on which freight-cars destined for Kansas City were

placed.   It connected with a main track used by the Missouri Pacific Railway Company, and on each side of the switch-track a number of small houses, shanties and tents of a temporary character were erected and occupied.   In one of these, and about 10 feet from the track, the plaintiff below lived with his parents, and in the same row, and only a few steps away, his uncle lived in a tent that was about 10 feet from the same track.   A switching train backed in upon this track, upon the morning of the injury, to place cars in different parts of the yard.   To get in upon another switch-track it became necessary to run the train out upon the main track, but as a Missouri Pacific passenger-train was nearly due the switching crew decided to wait until it had passed before going out upon the main track.   The switching train remained standing upon the switch from 15 to 30 minutes, waiting for the passenger-train to pass, and some of the witnesses claim that the train was about 30 cars in length and extended on either side of the house where the plaintiff below lived, while other of the witnesses claim that it was a short train of seven or eight cars, one end of which only extended up to the houses in question.   After the Missouri Pacific passenger-train had passed, the switching train was moved, and, in some way, not disclosed in the evidence, the right hand of the boy was crushed and cut off.   No one saw the occurrence, and there is no evidence to show how the boy came to be at the track nor what his position was immediately prior to the injury.   He was seen by his parents at home four or five minutes before the injury, when he appears to have gone to his uncle's tent, and the uncle saw him leave the tent about two minutes before he heard a cry and discovered that the boy was hurt.   When

found, he was near the track, but whether he walked in at the side of the train or was in front of the end of the car when the train was moved, does not appear. His parents and uncle had seen the car standing there for some time before the boy left home, but none of them can tell the position he occupied or what he was doing when the cars were moved. It is said that no signals were given of the movement of the train, but signals would have been of little use to such a child.

The main claim is that no employee was upon the rear end of the train to prevent injury to children who might be near to or upon the track. Upon this question there is a dispute in the evidence, but, assuming that the company failed in this respect, it does not appear that such precautions would have averted the injury. He may have been playing under the car out of the view of the lookout, or he may have run in front of the end car just as it was moved and when it would have been impossible, by the greatest diligence, to have stopped the train before he was struck. If a brakeman had been upon the train to guard against such injuries, who can say that the peril of the child would have been discovered in time to have prevented the injury ? It is not enough that the company may have failed to take necessary precautions in moving the train, but before there can be a recovery it must show that the boy was hurt in consequence of such failure. How he was hurt and whether due care would have avoided the casualty rest upon conjecture rather than upon established facts, and we conclude that the testimony is insufficient to support the verdict, and that a new trial should have been granted.

Complaint is made that the court erred in failing to

<div style="margin-left:2em"><small>1. Injury to<br>child—in-<br>sufficient<br>evidence.</small></div>

charge the jury with reference to the contributory neg-
ligence of the plaintiff's parents.    As this
2. Negligence
of parents.    action was not brought by the parents or
for their benefit, but is brought for the
benefit of the plaintiff himself, the negligence of the
parents cannot be imputed to him.    In this respect
there is a distinction between cases brought by an in-
fant too young to be charged with contributory negli-
gence and cases brought by the parents to recover for
the injury sustained by them by reason of the injury
of such infant.    In a recent case it was said that,
"where an action for a negligent injury to an infant
is brought by the parent, it is very justly held that
the contributory negligence of such parent may be
shown in bar, but it is otherwise if the action is
brought by the infant or by a next friend for the ben-
efit of the infant." (*C. K. & W. Rld. Co. v. Bockoven*, 53
Kan. 289.)

There is just cause to complain of some of the in-
structions that were given.    There is confusion and
inconsistency in the statement of the rule as to the
care required by the railroad company in moving the
train from the place where it stood.    The jury were
told that they might take into consideration the na-
ture of the lookout kept or examination made by the
employees of the train before it was moved, while
another portion made the moving of the train, with-
out an examination of the track or cars, culpable
negligence.    Under the testimony, the court was not
warranted in declaring it to be a duty to make an ex-
amination of the cars before moving the train to
ascertain whether there might be persons under the
cars who would be injured by the movement.

The jury were also directed to determine from the

Opinion of the Court.

evidence whether the defendant was guilty of reck-
lessness or wantonness, and we fail to find any testi-
mony which justifies a reference to that subject.

In the same instruction the attention of the jury
was especially called to the fact that Clarence Young
was the son of poor parents, and that the
people who lived in the neighborhood were
in poor circumstances. There was no rea-
son or propriety in calling the attention of the jury to
the financial circumstances of the parties. The fact
that the parents were poor had no bearing upon the
care to be exercised by the railroad company, nor
could it affect the measure of recovery of the plain-
tiff.

3. Financial
condition of
parties.

It is finally contended that the court erred in ad-
mitting the evidence of a city ordinance of Kansas
City, Kan., relating to the running of lo-
comotives and cars. It regulates the speed
of the trains running through the city,
provides for the giving of signals when moving loco-
motives and cars, and requires that a watchman, or
some other person, shall be on the rear end of the
train when running backwards through the city. It
contains a section to the effect that certain provisions
of the ordinance shall not apply to the Interstate
Rapid Transit Railway Company, and it is therefore
contended that it is class legislation and violates the
constitution of the state and of the United States.
We do not deem the provisions of the ordinance to be
material to this controversy, as the provisions of the
ordinance, so far as they apply to the case in ques-
tion, prescribe no higher degree of care than is re-
quired in a populous part of a city having about
30,000 inhabitants, as Kansas City has.

4. Violation of
city ordi-
nance.

For the errors mentioned, however, the judgment will be reversed, and the cause remanded for another trial.

All the Justices concurring.