## THE MISSOURI PACIFIC RAILWAY COMPANY V. ANNIE JAFFI.

**No. 13,114.**   ( 72 Pac. 535.)

### SYLLABUS BY THE COURT.

RAILROADS—*Tracks on Public Street—Injury to Infant.*  Before a recovery can be had in an action to recover damages from a railway company for injuries sustained by being struck with the rear end of a box car by reason of the concussion of the train in making a coupling therewith, where the only negligence complained of was in not having a watchman upon such car when the coupling was being made, it must be made to appear that if a watchman, exercising ordinary care, had been upon the car the injury would have been averted.

Error from Wyandotte court of common pleas; WILLIAM. G. HOLT, judge.  Opinion filed May 9, 1903.  Reversed.

*Waggener, Doster & Orr,* for plaintiff in error.

*Angevine & Cubbison,* and *C. D. Sharpe,* for defendant in error.

The opinion of the court was delivered by

GREENE, J.: Annie Jaffi sued the Missouri Pacific Railway Company to recover damages which she claimed she had sustained by reason of the negligence of its agents, servants and employees in operating and running one of its trains backward on one of the populous streets in the city of Kansas City, Kan., without having a watchman or lookout upon the rear car and without blowing a whistle or sounding an alarm.  She recovered judgment, and the railway company prosecutes error to this court.

Sufficient of the facts to an understanding of the questions which we are called upon to decide in this

6—67 KAN.

case are the following: On State Line street, in the city of Kansas City, Kan., the defendant company had one of its storage tracks. Annie Jaffi and her family occupied a house very close to this track. On the day of the accident three box cars were standing coupled together on this track opposite, and within a few feet of, the door of plaintiff's residence. These cars were not connected with, or a part of, any train. At a considerable distance south of where these cars were standing the employees of the company were making up a train or removing and replacing cars.

The testimony of Mrs. Jaffi, in substance, was that her boy five and one-half years old ran out of the house for the purpose of throwing water out of a cup. He crossed this track from the east to the west, north of the north car, and immediately turned and approached the track, putting his foot upon the west rail and within two or three feet of the north wheel of the north car and appeared to be throwing out the water. Mrs. Jaffi, who was inside the house standing by an open window, heard the rumbling of a train, looked out, and saw the child. She ran out and just before she got to him the train which had backed up to couple on to these cars struck them, moving them back two or three feet and upon the boy's foot. The train then moved south. She seized the child under the arms and around the body but in some way the child's foot or clothes became entangled in some portion of the rear part of the car, from which she was unable to disengage him. She held him in her arms while the train moved from 100 to 125 feet. An alarm was conveyed to the operators and the train stopped. When the train stopped the rebound occasioned by the slack of the train caused something to bump against Mrs. Jaffi, causing an internal rupture, resulting in perma-

nent injury.   It was for this injury she recovered in the court below.

Mrs. Hessie Ray, a witness for plaintiff, testified that she was walking down the track and saw the child standing on the track, toward the west rail, "fixing to throw out some water," and about the time he threw the water out the train bumped back and caught him and dragged him; that his mother ran out and caught him under his shoulders and held him up and commenced shouting.   She also testified as follows:

"Q.   How near to the car then when you first saw him?   A.   Just like here was the boy and right there was the car (indicating).

"Q.   Right close up?   A.   Yes, sir.

"Q.   And the car was standing still and then it bumped?   A.   Yes, sir.

"Q.   Was the car perfectly still when you first saw him?   A.   Yes, sir.

"Q.   And was he right up close, almost touching the car?   A.   Yes, sir.

"Q.   And they jolted the car back a little and caught him, and then started up again?   A.   Yes, sir.

"Q.   How far back did the car move when it struck him?   A.   Not so powerful far.

"Q.   Just enough to catch him between the two wheels?   A.   Yes, sir.

"Q.   That was about two or three feet?   A.   Yes, sir.

"Q.   Then it started up ahead again?   A.   Yes, sir.

"Q.   He was a little bit of a fellow wasn't he?   A. Yes, sir.

"Q.   He could almost stand under the car?   A. Yes, sir.

"Q.   You say he was so close to the car that he could touch the car?   A.   He could almost touch it. He was not jammed right up to the car.

"Q.   Well, my question is, he was right close up to it, so that, when it did bump it two or three feet, it moved it far enough to get him between the wheels of that car?   A.   Yes, sir."

There was a switchman on the east side of the south end of these cars to couple them on to the train when it moved back, but there was no watchman on the top. The engine backing up was not moving to exceed two or three miles an hour.

The negligence complained of was the omission of the defendant company to sound an alarm or to have a guard on the rear of said cars to warn persons off the track. Unquestionably it would be negligence for a railroad company to back one of its trains onto a street-crossing, or upon a street partially or wholly occupied by its tracks, in a populous part of a city, without having a guard on the rear car to warn persons likely to enter upon the track. However, before a recovery could be had, it must appear that but for such negligence the injury would not have been sustained. The child whom the mother was trying to rescue, when she received the injuries for the recovery of which this action was brought, was five and one-half years old, and according to the testimony of Mrs. Ray, the only witness (except the mother) who saw the child immediately preceding and at the time the car struck him, he was a little bit of a fellow and could almost stand under the car ; that before the car moved he was standing so close to the rear end of the car that he could almost touch it. It appears from the testimony of Mrs. Ray and Mrs. Jaffi that the car did not move backward to exceed three feet before it struck the child. The child was either under the side of the car with his foot on the rail, as testified by Mrs. Jaffi, or between the rails and so close to the end of the car that he could almost touch it, as testified by Mrs. Ray. It is not made to appear that a guard stationed upon the rear car, and in the exercise of ordinary care, would or could have seen a child as

small as this one at either of the places where plaintiff's witnesses claim he was standing when the car backed upon him.

In *A. T. & S. F. Rld. Co. v. Morgan*, 31 Kan. 77, 1 Pac. 298, this court said:

"The omission to sound the whistle of an engine in accordance with the provisions of § 60, page 226, Comp. Laws of 1879, is negligence. . . . Although this is so, a railroad company is not liable for damages unless the injury complained of is attributable to or caused by such omission."

This statement appears to have been based upon the language of the statute, but it is no less true without the statute.

To the same effect is the case of *A. T. & S. F. Rld. Co. v. Walz*, 40 Kan. 433, 19 Pac. 787, where it was said:

"The failure to give the signal (at a public crossing) will not create a liability against the company unless the injury was the result of such failure."

The principle announced in *Railway Co. v. Young*, 57 Kan. 168, 171, 45 Pac. 580, is peculiarly applicable here.   A child of tender years was playing upon the track of the company.   It backed one of its trains upon and killed him, and the negligence complained of was in not having a watchman or guard on the rear car to warn persons of the approaching train.   It was said:

"The main claim is that no employee was upon the rear end of the train to prevent injury to children who might be near to or upon the track.   Upon this question there is a dispute in the evidence, but, assuming that the company failed in this respect, it does not appear that such precautions would have averted the injury.   He may have been playing under the car out of the view of the lookout, or he may have run in front

Railway Co. v. Jordon.

of the end car just as it was moved and when it would have been impossible, by the greatest diligence, to have stopped the train before he was struck. If a brakeman had been upon the train to guard against such injuries, who can say that the peril of the child would have been discovered in time to have prevented the injury? It is not enough that the company may have failed to take necessary precautions in moving the train, but before there can be a recovery it must show that the boy was hurt in consequence of such failure."

For the reasons assigned, the judgment of the court is reversed and the cause remanded for retrial.

All the Justices concurring.