No. 21,278.

THEODORE SCHAUBEL and LAURA SCHAUBEL, *Appellees*, v. THE CITY OF MANHATTAN, *Appellant*.

### SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Unguarded Excavations in City Street—Child Drowned.* When a city street which is little used for travel, and in which the children of the adjacent residents. are accustomed to play, is torn up with excavations for laying a water main and lateral connections, and the excavations become filled with rain water, it is the duty of the city to exercise reasonable care to keep the children from going into the street to wade and play, and thus to prevent them from being drowned in such flooded excavations; and the question whether the city has exercised such reasonable care is ordinarily for the jury's determination.

2. SAME. A three-year-old child was drowned in a flooded ditch in a street not much used for travel, but much used as a playground for children. The parents knew of the existence of the street excavations in front of their residence, and that the excavations were filled with rain water, and that their child was in danger of drowning therein, and diligently watched their child and tried to keep her off the street, but during a few minutes when the attention of the parents was diverted to domestic duties, the child eluded their vigilance and ran out into the street to wade and play, and was drowned. *Held*, that in an action brought by the parents against the city for the wrongful death of the child, the question of the parents' contributory negligence was one for the jury's determination.

3. SAME—*Judgment Not Excessive.* A judgment for $3,500 against a city for the wrongful death of a three-year-old child is not excessive to . such an extent as to warrant its reduction by an appellate court.

Appeal from Riley district court; FRED R. SMITH, judge. Opinion filed February 9, 1918. Affirmed.

*Alvin R. Springer*, of Manhattan, for the appellant.

*C. B. Daughters*, of Manhattan, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: The plaintiffs recovered judgment against the city of Manhattan for the death of their three-year-old child who was drowned in a ditch in the street in front of their residence. The city had excavated a ditch the entire length of the block for the purpose of laying a water main. Lateral ditches

to the sides of the street had also been made to bring the water supply to the residence property lines. The excavations were four feet deep. The work was about completed on Monday, August 16, 1915, and the two ends of the street block were barricaded against travel. That night a heavy rain fell and a considerable portion of the vicinity drained toward this particular street and block and the ditch excavations were filled with water. The following afternoon the child ran out across the parking into the street "to wade and play" and fell into the lateral ditch in front of her home and was drowned.

The petition charged the city with negligence in allowing the ditch to remain open and unprotected and filled with water, and that the child while wading and playing in the street fell into the ditch and was drowned. It was alleged that the child was too young to know and appreciate the danger, and that her mother was busy and did not know and appreciate the danger, and that the parents used all proper care and diligence in looking after the child.

The jury returned a verdict for plaintiffs for $4,500. Certain special questions were answered:

"First: Did either or both of the parents of Agnes Schaubel know that there were ditches in the street in front of their home, and that these ditches were filled with water prior to the time Agnes Schaubel escaped the custody of her parents and was drowned?

"Answer: Yes, but not the [particular lateral] ditch in which the child was drowned.

"Second: By the exercise of ordinary care and prudence, could the parents of Agnes Schaubel have restrained her from leaving their custody and control, and thereby have prevented her from going into the street where she was drowned?

"Answer: No.

"Third: Did the city of Manhattan have a large number of workmen at work on the ditches on Laramie street, at Fourth and Laramie and at Third and Laramie, and in the block between Third and Fourth, during the period from noon until the child was drowned?

"Answer: Testimony shows twelve men were at work.

"Fourth: If you answer the third question in the affirmative, state how near you find any of the workmen were to the place the child was drowned, at the time of the accident?

"Answer: Between seventy-five and one hundred feet.

"Fifth: Did the defendant herein, on the day of the accident have a number of men engaged at work in bailing the water out of the ditch on Laramie in the block where the Schaubels lived?

"Answer: Yes, at work in the main ditch.

"Sixth: Do you find any negligence on the part of the city, and if so, state in what particular it was negligent?

"Answer: Yes, because they left the ditch unguarded and exposed."

The trial court ordered a remittitur of $1,000 and gave judgment for plaintiffs for $3,500.

The familiar schedule of errors is assigned, but the gist of the city's complaint is the net result and the excessive verdict. Examining the errors assigned, no error can be discerned in overruling the demurrer to the petition nor in overruling the demurrer to the evidence. Nothing serious can be noted concerning the admission or exclusion of evidence, nor in the court's instructions so far as presented by the abstract of the record.

The defendant concedes that it was its duty to safeguard its streets for ordinary travel and to effectively close this street to ordinary uses while it was undergoing repairs, but it is contended that the use of a street by a child to "wade and play in" while the street was dug up with ditches for the laying of water mains was not an ordinary use of the street, and that the city was not bound to guard the street against such a use, nor could the city be required to anticipate and prevent the accident. While the street was torn up and the ditches flooded, it was the duty of the city to exercise reasonable care to keep the children off the street, the means for so doing being somewhat a matter of discretion on the part of the city. The city could and should have anticipated the danger and should have made some reasonable effort in good faith to avert it.

The foreman for the city realized the danger to children and had cautioned his workmen to keep them away. But when asked if he had seen plaintiffs' child before it was drowned he answered:

"No, No, No, I got so accustomed to seeing so many children along the street there that I did n't hardly pay any attention to who the children were. The main thing I looked out was to try to keep them out of the way."

This testimony supports the finding of the city's negligence.

The complaint as to the excessive verdict and judgment requires no discussion. The trial court pared down the verdict a thousand dollars, and the amount of the judgment finally

Schaubel v. City of Manhattan.

awarded, while large, is not so gross as to justify an appellate court in ordering its further reduction.

The judgment is affirmed.

MARSHALL, J., dissents.

DAWSON, J. (dissenting) : I dissent. I take no stock in the doctrine that the city should have barricaded or otherwise guarded the sides of the street. While there may be no negligence on the part of the parents in permitting their small children to play in unfrequented streets, it would be the rankest kind of negligence to permit their three-year-old babies to play in streets congested with traffic, and any street temporarily torn up for repairs and improvements should be considered as a congested street. It is difficult to see how the city could have kept the child off the street when the parents, who were quite alert to the danger and prompted by their natural solicitude for their offspring, failed to do so. The mother testified:

"I went out about eight o'clock in the morning and noticed that all the ditches were filled with water. I went and got the children and brought them in. . . . Before noon I spent most of the time watching the children. Went to mother's and took both children and when I came back brought them in the house. I brought them in whenever I found they had got out. I was baking in the afternoon and I had occasion to step into the bedroom for a minute and when I came back the child was gone. . . . The street on that block was little used for travel. There was a big rain Monday night. A rain about noon Monday started the water running in the gutters. We watched the children and I tried to keep them in till she slipped away. After I dressed the children that morning one went out the back way and one the front way. I brought them in, Mr. Schaubel asked why I brought them in. I said there was ditches in the street full of water, and I did not want them to get in the ditches.

"Q. Did you and your husband talk about the dangers of the children getting out there? A. Well, now I will tell you, when I got them dressed, it is natural for children to go out to play, for they do love outdoors, and one went out the back door and one out the front way. I went right after them, out the front way, and Mr. Schaubel says, 'What are you bringing them in for?' and I says, 'I am not going to have them go in those ditches and drown,' and he says, 'I am going to see those ditches'; and he walked out on the sidewalk and I did show him one in the parking. He put brush over it, and said he would put brush over that one, anyway, because it was so close to the house."

28—Kan.—1778

Touching the jury's second finding, it is not only contrary to the evidence but it is downright silly. The mother was successful in keeping the baby off the street in the forenoon, although it got out of doors several times and had to be brought back indoors. The parents could with diligence have been just as successful in the afternoon. They knew the child was prone to escape, and that if it did it would be in imminent danger. It should be kept in mind that this is an action by the parents, and not like that of a child for its own injuries.

Another thing: The decision in this case will do no earthly good. Not a city in Kansas will reorder its conduct on account of this decision. Does anybody suppose that because the city of Manhattan has had the misfortune to be penalized in damages for the death of a child drowned in a ditch dug in a street for the laying of water pipes, that any other city will barricade the sides of a street undergoing improvements or hire a small army of watchmen to forfend against a like mishap whenever the city is extending its water main?

I sympathize with the plaintiffs, but the law is clearly against them. (*C. K. & W. Rld. Co. v. Bockoven,* 53 Kan. 279, 289, 36 Pac. 322; *Railway Co. v. Young,* 57 Kan. 168, 172, 45 Pac. 580; *City of Chicago v. Starr, Adm'r,* 42 Ill. 174; *Reed v. Minneapolis Street Ry. Co.,* 34 Minn. 557; Beach on Contributory Negligence, 3d ed., § 131; 1 Thompson on Negligence, §§ 330-333. See, also, Ann. Cas. 1912 D, 526.)

I discern no negligence on the part of the city; the city could not reasonably have anticipated the flooding of the ditches and that a child would be drowned therein because of its parents' failure to keep it off the street, when the parents knew the danger and feared 'the very accident which transpired. The consequence is altogether too remote to justify the mulcting of the city in damages. Furthermore, I reject the doctrine to be inferred from this decision, that it is the duty of a city to make its streets at all times a safe playground for three-year-old children. But if an unfrequented street may be regarded as a playground—as a city park—then the rule announced in *Harper v. City of Topeka,* 92 Kan. 11, syl. ¶ 3, 139 Pac. 1018, should govern.

In writing the opinion of the majority, although I searched diligently, I could find no analogous case with which to fortify

it. The only one cited by the appellee, *Gibson v. City of Huntington,* 38 W. Va. 177, does n't fit, and is of no value except as to the right of a child to play in an unfrequented street. That case does n't even tell which litigant lost or won, although I glean from its discourse that the city made a successful defense.