KANSAS PACIFIC RLY. CO. v. MARGARET SALMON, *Adm'x.*

1. PASSENGERS; *Employees of Railway Companies.* A person in the employment of a railway company, riding from his home to his employment in a caboose car attached to a freight train, without paying fare, according to the custom and the understanding of the parties, from which car and trains all persons except employees of the company are excluded, of which exclusion such person has full knowledge, is not a passenger but only an employee of the company.

2. NEGLIGENCE—*Railway Company and Employees.* Negligence between co-employees of a railroad company is not, as between one of the employees and the company, negligence of the company.

3. ———— *Collision; Presumption.* As between the company and one of the employees of the company, the mere naked and unexplained fact of a collision of two trains of cars operated by the same company raises no presumption of negligence on the part of the company.

*Error from Leavenworth District Court.*

THE defendant in error as administratrix of the estate of her deceased husband Daniel Salmon, brought suit against the *K. P. Railway Company* to recover damages sustained by the widow and heirs of said deceased by reason of his death. The action was brought under § 422 of the code.

The petition alleged that said Daniel Salmon was a passenger riding on defendant's cars, on their railroad, and that his death was caused by the gross carelessness and negligence of the defendant, by its agents and employees, and through no want of care or fault on the part of said Daniel, and demanded judgment for ten thousand dollars. The facts and instructions are sufficiently stated in the opinion. The action was tried at the September Term 1872 of the district court. Verdict and judgment for plaintiff for $7,500. New trial refused, and the *Railway Company* brings the case here on error.

*Hurd & Birnie*, for plaintiff in error:

1. The allegations of the petition are that Daniel Salmon was a passenger on defendant's cars, and had paid his fare as such, and while such passenger was, by the negligence of the defendant, and without fault on his part, injured, from which injury he died. The answer denies these allegations, and as a second defense alleges that the deceased was the servant of the defendant, and received his injury and lost his life while such servant, in the regular course of his employment as such, and by an accident occurring without any fault of defendant. That deceased was not a passenger, see 36 Mo., 418; 1 Redf. on Rlys., 527, 530, 533, 537; 17 N. Y., 134; 18 N. Y., 432; 14 Gray, 466; 10 Cush., 228; 8 Ohio St., 249; Shear. & Redf. Neg., §§ 100, 109.

2. The agreed facts show that Salmon at the time he was injured was a co-employee with the persons in charge of the colliding train. If he was such co-employee, the defendant below was not guilty of negligence toward *him*, unless such co-employees were improper persons to be in charge of the trains, and the defendant knew it, or that the machinery was defective, and defendant knew it. There is no admission or evidence that the defendant was negligent in employing these co-employees, or that it furnished defective or unsuitable machinery, and until such facts are proved the presumption is, that the employees were proper persons, and the machinery

sufficient for the use intended, and in good order. Negligence cannot be inferred, but must be proved. *U. P. Rly. Co. v. Milliken*, 8 Kas., 647.

3. The court erred in its instructions. As between the carrier and a passenger, the negligence of an employee is the negligence of the carrier; but quite a different rule obtains when the injured party is the servant of the carrier, and the injury was caused by the negligence of a fellow servant. The fact of the collision may be presumptive evidence that the persons in charge of the colliding trains were negligent, but their negligence is not the negligence of the carrier, as between him and the injured party, if such party was a co-employee. Under such a state of facts as between master and servant, the master cannot be held guilty of negligence, and liable, unless such servants were incompetent, and the carrier was negligent in their employment. 10 Allen, 239; 4 Selden, 175; 28 Vt., 63; Shear. & Redf. on Neg., pp. 101, 115.

4. The court instructed the jury that they might find, as a question of fact, whether the defendant was negligent, and then instructed them that the negligence of the deceased was a question of law for the court. If the court was right in the first instruction, it was wrong in the second. If submitted at all, it should have been submitted as to both parties.

5. Did the deceased, by his own negligence, contribute to his own injury? He went into this car and upon this train knowing that it was a dangerous position to be in, and that passengers were prohibited from being there, and that the defendant considered the place a dangerous one, by prohibiting its passengers from being there. He knew the rules of the company, the danger of the position, the manner in which these trains are made up and operated, and its liability to accidents. With a full knowledge of all these, he went upon this train, and was injured. In this he assumed all the risk to which he voluntarily exposed himself. 30 Mo., 47; 12 Pick., 177; 20 Mich., 105.

There was no evidence warranting the jury in finding that

the defendant was guilty of negligence—and a new trial should have been granted.

*Stillings & Fenlon,* for defendant in error:

1. Though it may be admitted on the facts found that Daniel Salmon was not, in the ordinary and common acceptation of the term, a passenger—not having bought and paid for a ticket of passage, and not having paid the conductor fare—yet the special verdict presents such a state of facts as in law clothed him for the time being with all the legal rights of a passenger, and imposed upon the defendant below all the legal responsibilities incident to common carriers of passengers. To establish the relation of passengers, the payment of fare is not necessary. The consent of the company, or its properly authorized officers, to carry—there being no fraud—is all that is necessary to give the person carried the legal rights of a passenger. This court, in *U. P. Rly. Co. v. Nichols,* 8 Kas., 505, held that "any person may be a passenger without the payment of any fare, if he be on the train with the consent of the company, or its officers, provided said consent be obtained without any fraud, or provided said company, or its officers, have a full knowledge of all the facts." The facts found by the jury establish every element of this definition of a passenger. They show that said Salmon was, by permission of defendant, accustomed to return upon his route, upon defendant's trains, to Ellsworth, and this was by the consent and permission of the defendant, that "he set out to ride to Brookville, as was his custom to do, upon the defendant's freight train, by permission of the conductor being in charge of the freight train from Ellsworth to Brookville;" that "with the assent and permission of the defendant, Salmon got into the caboose car," and "and such facts were known to the conductor of such train;" that "at the time of the injury which caused his death, he was not a co-laborer with the other employees of the defendant on that train." The fact of a general employment does not absolutely prevent the employee from occupying the relation

of passenger whilst that employment subsists. Am. Rly. Cases, 568; 14 How., 458; 3 Head, 638.

2. But if Salmon was not entitled to the rights of a passenger, but only to those of an employee, the judgment must be affirmed. If his death was caused by the negligence of a co-laborer in the same general line of employment, the current of authority would seem to deny a remedy against the railroad company. But there is no such case presented to the court. The jury find "that the injury received by him, and from which he died, was not occasioned by any neglect or fault of his," and that "the death of the said Daniel Salmon was caused by the negligence of the defendant without any fault of the said Daniel Salmon." Here is a direct, plain finding that he came to his death "by the negligence of the defendant," not by the fault or neglect of any other or co-laborer, not contributed to by himself, but by the direct negligence of the defendant itself. There is no authority which holds that a railroad company may by its own negligence slaughter one of its employees and claim immunity from legal liability; but there are numerous cases where the negligence being that of the defendant itself, either by defective roads, bridges, engines and machinery, etc., is held liable to its own employee: Shear. & Redf. on Neg., 104, § 89; 42 N. H., 225; 53 Penn. St., 250. When the principal is himself in fault, the liability attaches: 4 Seld., 175; 8 Allen, 441; 10 Gray, 274. As to care and safety of the employee, 12 Ohio St., 496.

3. That the collision of the trains, as admitted, and found as a fact by the jury, is *prima facie* negligence, see 8 Penn. St., 479; 32 Penn. St., 242; 1 Jones, 145; 2 E. L. & Eq. Rep., 360; 22 Wis., 432; 1 McLean, 540; Angell on Carriers, § 569. The fact being admitted that the trains collided, the finding of the jury from that as well as the legal conclusion being negligence on the part of the defendant, the burden of proof was on the defendant, to show that this was a class or character of negligence which would relieve it from legal liability to the plaintiff; for instance, that the collision was

the result of the negligence of the conductor, the engineer, brakeman, or some co-employee of Salmon, so showing the negligence of a co-employee, as contra-distinguished from that of the defendant itself. 38 Miss., 242; 2 Stephens, N. P., 1552, 1555; 18 N. Y., 252, 409; 13 Peters, 181; 29 Iowa, 14, 49; 22 Mo., 373; 57 Penn. St., 380; 3 Phil. Ev., 469.

Here the plaintiff's intestate was lawfully on the train; the two trains collided, (one being unable to ascend a grade,) without fault of deceased, the car in which he was, was crushed, and he was killed. Whether this was negligence of defendant was left to the jury, the defendant not attempting to show the collision resulted from any disobedience of orders or neglect of duty on the part of any employee.

This court has heretofore decided that there is "no reason peculiar to this state why human life and safety are not as valuable here as elsewhere; at any rate, it is not the province of courts to cheapen it by construing away established principles laid down to make life secure." One of the "established principles" laid down to make life secure in this state is found in the act approved 2d March, 1870, (Laws 1870, page 197,) which reads as follows:

"SEC. 1. That railroads in this state shall be liable for all damages done to person or property, when done in consequence of any neglect on the part of the railroad companies."

The record shows that Salmon lost his life, not only through the neglect of the railroad company, but without any fault of his. It is respectfully submitted that the "person" mentioned in the act of 2d March, 1870, is the employee of the company as well as the passenger; and if he lost his life "in consequence of any neglect" of the railroad company, the legislature intended to make the company liable therefor. 24 Iowa, 364.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by Margaret Salmon, administratrix of the estate of Daniel Salmon de-

ceased, against the Kansas Pacific Railway Company, to recover damages for wrongfully causing the death of said Daniel Salmon. The issues were tried by a jury; and on the trial the parties submitted the following agreed statement of facts to the jury as evidence, to-wit:

"1st. The plaintiff is the administratrix of the estate of Daniel Salmon deceased, duly and legally appointed, as in the petition alleged. 2d.–At the time of death of Daniel Salmon, he left surviving him, the plaintiff Margaret Salmon, his widow, and two children of the said Margaret and the said Daniel, issue of their marriage. 3d.–The defendant is a corporation and common carrier, as alleged in the petition, and also of freight trains; and as such owned and operated the line of railroad alleged in the petition. 4th.–On the 13th of September 1870 said Daniel Salmon was, and for a long time previous thereto had been in the employ of the defendant as locomotive engineer. The family of the said Salmon resided at Ellsworth, and the said Salmon was, by permission of the defendant, accustomed, on days when it was not his regular turn to run an engine, to return upon his route on defendant's trains to Ellsworth, a distance of twenty-three miles from Brookville, to stay with his family, instead of remaining at Brookville, which was the eastern end of his regular run as an engineer; and this was not forbidden by the foremen of engineers, his immediate superior, but was by the consent and permission of the defendant; but he was then subject to be ordered by defendant to take charge of any engine of defendant at any moment. And on the morning of the said 13th of September, having remained all night with his family at Ellsworth, he set out to ride to Brookville, as was his custom to do, upon the defendant's freight train, (which did not carry passengers, and was by the defendant forbidden to do so, unless the facts herein stated constituted the deceased a passenger,) to take his run; that is, to operate an engine from Brookville westward, according to his regular turn; and as such employee, by permission of the conductor in charge of the freight-train from Ellsworth to Brookville, being a freight-train with a caboose car, in which laborers on the line of the said railway, and other employees, had been and were accustomed to travel to their work on said road, with the assent and permission of the defendant said Salmon got into the caboose car for the purpose of going to Brookville to resume his duties as such engineer at said point. He

7—11 KAS.

paid no fare, nor was he requested by the conductor to pay any fare, and was known to the conductor as an employee as aforesaid; and the said Salmon knew the usages of defendant respecting the prohibition of passengers upon freight trains. He was not actually employed in operating that train in any capacity, and such facts were known to the conductor of such train.   On the road between Ellsworth and Brookville, in the state of Kansas, and while said Daniel Salmon was in the caboose car as aforesaid, the train was endeavoring to ascend a heavy grade, and being unable to do so, backed down the grade, and came in collision with another train belonging to said defendant, going in an opposite direction from the way the aforesaid train was backing down.   The trains so coming into collision, the car in which said Daniel Salmon was, was crushed without fault or negligence on his part, and was thrown from the track, and he mortally wounded thereby, from which mortal wound he died the succeeding day.   That the injury received by him and from which he died, was not occasioned by any neglect or fault on his part, *other than may be legitimately inferred from the facts aforesaid.*"

There was some evidence introduced on the trial, but nothing that in the least affects or modifies the foregoing agreed statement of facts.   The jury found a special verdict; and in their verdict they found the facts literally as agreed to in the foregoing statement, except that they omitted the following concluding words of the agreed statement of facts, to-wit—"other than may be legitimately inferred from the facts aforesaid."   The jury made some other findings, but it is scarcely necessary to notice them, for those that harmonize with the foregoing statement of facts raise no question of law not already raised by such agreed statement, and those that conflict with said agreed statement were found by the jury without any evidence to sustain them, and against the evidence.   The main, and in fact the only question in this case is, whether the deceased was a *passenger*, or merely an *employee* of the defendant, while riding on the defendant's train.

1. Passengers; employees.   If he was a passenger, the other facts would undoubtedly give the plaintiff the right to recover in this case; but if he was merely an employee, the plaintiff

would not have any such right. The court among other instructions charged the jury as follows:

"I instruct you, that the mere, naked, unexplained fact of a collision of two trains of cars, operated by the same railroad company, raises the presumption of *negligence on the part of the company*."

And the jury, in pursuance of this instruction, found as follows: "5th.–The death of said Daniel Salmon was caused by *the negligence of the defendant*, without any fault of the said Daniel Salmon"—and upon this finding the court below rendered judgment for the plaintiff and against the defendant. All this would have been correct if the deceased had been a passenger; but it was certainly incorrect if the deceased was only an employee of the company. The said collision was the only proof of negligence on the part of the railroad company introduced on the trial. A collision always presumptively shows negligence, but whether *negligence of the company*, or negligence merely of some one or more of its officers, agents, or employees, is the important question in this case. As between the railroad company and a passenger, the negligence of any officer, agent, employee or servant of the company is the negligence of the company itself; but as between the railway company and one of its employees, the negligence of another employee, a co-employee, is not at all the negligence of the company. (*Dow v. K. P. Rly. Co.*, 8 Kas., 642.) Therefore while a collision presumptively proves negligence on the part of the company as between the company and a passenger, yet it never proves negligence on the part of the company as between the company and one of its employees. It is a general rule that one employee does not represent the principal any more than any other employee; and negligence between co-employees is not at all the negligence of the principal. This rule has its exceptions. As to railroad companies, the general manager, the general superintendent, the general officer for the employment or discharge of the other agents and servants of the railway company, or indeed any other

general officer, would probably be the representative of the company, in fact *the company*, as between the company and all other persons, whether such persons were employees or not. But proof of a collision does not at all show negligence on the part of any one of these general officers. It tends more properly to show negligence on the part of the brakeman, the fireman, the engineer, the conductor, or some other inferior officer, agent or servant of the company, who has a more close and direct connection with the collision.

Was the deceased a passenger? We think not. It is not every person who may enter a car, or go upon a train, or even ride upon a train, that can thereby claim that he is a passenger, or that he is entitled to all the rights and privileges of a passenger. ( *U. P. Rly. Co. v. Nichols,* 8 Kas., 505.) Among the reasons why the deceased was not a passenger in the legal sense of the term we would state the following: He bought no ticket, paid no fare, nor offered to buy any ticket or pay any fare; nor did he intend to buy any ticket or pay any fare. He did not at any time claim to be a passenger, or act as such. He did not go into a passenger car, nor upon a passenger train. But on the contrary, as he was a mere employee of the railway company, he chose to ride as such, and all the time acted as such. He went into a caboose car attached to a freight train, and rode in such caboose car as an employee of the company, because he was an employee, where other servants and employees of the company rode, and from which passengers, and all other persons except employees of the company, were excluded; and of this exclusion the deceased had full knowledge. He was going from his home to the place of his employment, as was his custom, for the purpose of performing the duties of his employment, and rode in the caboose car on a freight train, and paid no fare, according to custom, usage, understanding and agreement of the parties. Now, as the facts of this case show beyond all doubt that the deceased was not a passenger, but merely an employee of the company, the charge of the court was erroneous, the finding of the jury with regard to

negligence of the company was erroneous, not being sustained by any evidence, and the judgment founded on the verdict was erroneous. The plaintiff did not by the evidence make out any case against the defendant, and the court therefore erred in refusing to grant a new trial. (*Higgins v. Han. & St. Jo. Rld. Co.*, 36 Mo., 418; *Gilshannon v. Stony Brook Rld. Co.*, 10 Cush., 288; *Seaver v. Boston & Maine Rld. Co.*, 14 Gray, 466: *Russell v. Hudson River Rld. Co.*, 17 N. Y., 134.) Chapter 93 of the laws of 1870, p. 197, has no application to this case. That act applies only where a railway company, *as a company*, has been negligent, and does not apply to negligence between co-employees of a railway company. The judgment of the court below must be reversed, and cause remanded for a new trial.

All the Justices concurring.