## THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY v. JAMES S. TAYLOR.

### No. 11308.

RAILROADS —*Injury to Employee—Defective Appliances.* A railroad-car became broken and dangerous to handle along a line of railway where the common law of the master's non-liability for injuries to his servants except through his own negligence obtained. An employee of the railroad company, without fault upon his own part, was injured in handling the car. There was no evidence tending to show knowledge or opportunity to acquire knowledge upon the part of the railroad company of the dangerous condition of the car, nor any evidence as to how long it had been in that condition. *Held,* that the railroad company is not liable to the injured employee.

Error from Sedgwick district court; D. M. DALE, judge. Opinion filed July 8, 1899. Reversed.

*A. A. Hurd, O. J. Wood,* and *W. Littlefield,* for plaintiff in error.

*Amidon & Conly,* for defendant in error.

The opinion of the court was delivered by

DOSTER, C. J.: This was an action by James S. Taylor against the Atchison, Topeka & Santa Fe Railway Company to recover damages for bodily injuries negligently inflicted upon him as an employee of the company in the territory of Oklahoma. The plaintiff was a brakeman on one of the defendant's freight-trains. His train was going north, and had stopped at the city of Guthrie to do some switching and other necessary work. A part of the work to be done was the moving of some freight-cars which had been left standing on a side-track before the train upon which plaintiff was employed arrived. The draw-bar at one end of one of these cars had been pulled out so that it

could not be coupled in the ordinary way. It was fastened to another car by means of a chain which, as arranged, had more "slack" or a greater length than should have been allowed to it. The plaintiff did not observe the condition of this car nor the fact that it had been fastened to the other by means of the chain. In the performance of his duties he was riding upon the top of this car as it was pushed by the engine. The engineer stopped quite suddenly. The slack of the chain before mentioned ran out to its full length. This at once arrested the motion of the car, causing it to rebound in the opposite direction. This unexpected occurrence threw the plaintiff off his balance and against another car, causing the injuries of which he complains.

The negligence charged in the petition was that of the enginemen in stopping the engine and attached cars with unnecessary suddenness. The case, however, was not tried upon the theory of their negligence, but was tried upon the theory of the negligence of the railroad company as master for allowing the broken car to stand upon the side-track without repair and without warning to the plaintiff of its dangerous condition. Counsel for both parties admit in their briefs that the case was tried on this theory and such is also manifest from the record. We shall, therefore, pay no attention to the variance between the plaintiff's petition and his evidence.

The jury found a verdict in the plaintiff's favor and in addition thereto made special findings of fact, one of which was that the common-law liability of the master for injuries received by a servant in his employ alone obtained in Oklahoma; that is, the statutes of that territory give no right of action to an employee for injuries negligently inflicted upon him

by a coemployee or fellow-servant. The jury also found that the enginemen were not guilty of negligence in suddenly stopping the engine, so that, even if they were to be regarded in law as vice-principals, or in other words as the master, no recovery could be had because of their conduct. They also found that "the car in question had been out of repair long enough, under the rules of the company, for the servant of the road whose duty it was to see to repairs, by the exercise of ordinary care, to have had the car repaired," but another finding stated that there was no evidence as to how long the car in question had been out of repair. This last-mentioned finding was in conformity to the truth. There was no evidence as to the time when the draw-bar pulled out; no evidence as to the time when it had been chained to the other car; no evidence as to when it had been set on the side-track at Guthrie, and no evidence as to how long it had remained there. Nor was there any evidence as to the existence of any rules of the company requiring its servants or employees to observe and report the damaged condition of cars from which a presumption of previous knowledge by the superior employees of the company could be drawn. At the time of the trial, but not at the time of the accident, the company had a rule upon the subject. The jury also found that at the time of the accident it was the duty of conductors to see that cars broken as the one in question was were properly chained for the purpose of switching in the yards. The jury also specially found as follows:

"Q. 11. Were any servants or agents of the defendant company guilty of negligence directly contributing to plaintiff's injury? A. Yes.

"Q. 12. If you answer the last question 'yes,' state

what was the official position of said servants or agents of defendant company. A. Conductor."

"Q. 36. Was not the plaintiff, and all other brakemen and conductors on the division, hired, among other things, for the purpose of chaining up and bringing to a place where they could be repaired cars in which the coupling apparatus had become so defective that they could not be repaired by the train crew? A. Yes.

"Q. 37. Was the draw-bar in question so out of repair that it could not ordinarily be repaired by the train crew of which the plaintiff was a member? A. Yes.

"Q. 38. If you answer the last question 'no,' was the train crew, or either member of it, guilty of negligence directly contributing to the plaintiff's injury in failing to repair the draw-bar? A. No evidence."

It is difficult to tell from these findings whether the jury meant to impute negligence to the conductor of the train with which the plaintiff was working, or to the conductor of the train in which the car became broken and from which it was set out on the side-track at Guthrie. It is, however, to be assumed that the former one was meant and counsel on both sides have so argued. The fact, however, as shown by the evidence, was that this conductor knew nothing whatever about the damaged condition of the car. He was at the station-house at the time the accident occurred, and it is certainly not to be presumed that his duties required him to examine this and all other cars his subordinate employees were required to handle to determine for them whether such cars were in a fit and safe condition. One of the jury's findings and an answer made by one of the witnesses would seem to charge a car inspector at Arkansas City, Kan., with knowledge of the broken condition of the car in question, but from the whole of the evidence it is plain that

his knowledge was acquired subsequently to the time of the accident. The case, therefore, may be generalized in statement of facts as follows : A railroad-car became broken and dangerous to handle along the line of defendant's road where the common law of the master's non-liability for injuries to his servants except through his own negligence obtained. A servant without fault upon his own part was injured in handling the car. There was no evidence showing knowledge or opportunity to acquire knowledge upon the part of the master or any of his vice-principals of the dangerous condition of the car, nor any evidence as to how long the car had been in that condition.

Under such a state of facts the common law does not hold the master liable for the servant's injuries. The rule is plainly and forcibly stated in Wood on Master and Servant, section 382 :

" The servant seeking to recover for an injury takes the burden upon himself of establishing negligence on the part of the master and due care on his own part ; and he is met by two presumptions, both of which he must overcome in order to entitle him to a recovery : First, that the master discharged his duty to him by providing suitable instrumentalities for the business, and in keeping them in condition, and this involves proof of something more than the mere fact that the injury resulted from a defect in the machinery. It imposes upon him the burden of showing that the master had notice of the defect, or in the exercise of that ordinary care which he is bound to observe he would have known of it. When this is established he is met by another presumption, the force of which must be overcome by him, and that is, that he assumed all the usual and ordinary hazards of the business. To overcome the force of this presumption he must show that the injury did not arise from an obvious defect in the instrumentalities of the business, or from a hazard incident to the business, but from causes that

were previously unknown by him to exist, or from extraordinary causes, and not from causes that he ought to have foreseen and can be fairly said to have assumed, or some legal excuse for taking the risk, if known to him, which strips his act of the imputation of negligence and overcomes the presumption that he voluntarily took the risk upon himself. These are absolute burdens imposed upon the servant, and he is not relieved from their force by showing that an injury resulted to him in consequence of defective or improper instrumentalities employed in the business, but must go farther and show that the defects producing the injury were not known to him, but were known or ought to have been known to the master, or that he performed the service at the risk of the master."

To supply the lack of evidence in such cases as this there is no presumption of knowledge by the master. In actions by passengers there is a presumption of knowledge by the master — the railroad company — of defective and dangerous conditions of its machinery and cars growing out of its ownership and control over them, but not so in the case of an employee or servant.  In the case of *K. P. Railway Co. v. Salmon, Adm'x*, 11 Kan. 83, which was an action by a railway employee, the district court had instructed the jury as follows : " I instruct you that the mere naked, unexplained fact of a collision of two trains of cars operated by the same railroad company raises the presumption of negligence on the part of the company." This was held to be error, Mr. Justice Valentine in the opinion saying :

"All this would have been correct if the deceased had been a passenger, but it was certainly incorrect if the deceased was only an employee of the company. The said collision was the only proof of negligence on the part of the railroad company introduced on the trial. A collision always presumptively shows negligence ; but whether negligence of the company or

negligence merely of some one or more of its officers, agents, or employees, is the important question in this case. As between the railroad company and a passenger, the negligence of any officer, agent, employee or servant of the company is the negligence of the company itself; but as between the railway company and one of its employees, the negligence of another employee — a coemployee — is not at all the negligence of the company. (*Dow v. Kansas Pacific Rly. Co.*, 8 Kan. 642.) Therefore, while a collision presumptively proves negligence on the part of the company as between the company and a passenger, yet it never proves negligence on the part of the company as between the company and one of`its employees. It is a general rule that one employee does not represent the principal any more than any other employee, and negligence between co-employees is not at all the negligence of the principal. This rule has its exceptions. As to railroad companies, the general manager, the general superintendent, the general officer for the employment or discharge of the other agents and servants of the railway company, or, indeed, any other general officer, would probably be the representative of the company, in fact the company, as between the company and all other persons, whether such persons were employees or not. But proof of a collision does not at all show negligence on the part of any one of these general officers. It tends more properly to show negligence on the part of the brakeman, the fireman, the engineer, the conductor, or some other inferior officer, agent or servant of the company who has a more close and direct connection with the collision.''

The principle thus decided is applicable to the case before us. The judgment of the court below is reversed and a new trial ordered.