No. 18,884.

TOBIAS BYLAND, *Appellant*, V. E. I. DU PONT DE
NEMOURS POWDER COMPANY, *Appellee.*

SYLLABUS BY THE COURT.

1. PERSONAL INJURIES—*Explosion of Powder Mill—No Proof of
   Negligence—Demurrer to Evidence Rightly Sustained.* In an
   action to recover for injuries caused by the explosion of
   defendant's powder mill there was no substantial evidence,
   direct or circumstantial, fairly tending to prove what actually
   caused the explosion. *Held,* following *Brown v. Railroad Co.,*
   81 Kan. 701, 106 Pac. 1001: "It is not sufficient to show
   circumstances which would indicate that the other party
   might have been guilty of negligence, especially when the
   evidence furnished suggests with equal force that the injury
   might have resulted without fault on the part of the other
   party;" and that the court rightly sustained a demurrer to
   the evidence.

2. SAME—*Negligence as Alleged Must be Proven.* Where in an
   action founded upon negligence the plaintiff alleges specifi-
   cally the negligent acts of the defendant upon which he relies
   to recover, he must prove the negligence alleged, and will not
   be allowed to make a *prima facie* case relying upon the doc-
   trine of *res ipsa loquitur.*

3. PERSONAL INJURIES—*Under the Facts Proven the Provisions
   of the Factory Act Do Not Apply.* Plaintiff was injured by
   the explosion of defendant's powder mill, and alleged, among
   other acts of negligence, failure of the defendant to provide
   some appliance to prevent metallic thumb-nuts from falling
   through a defective screen, and alleged that by reason of the
   absence of such an appliance metallic thumb-nuts found their
   way into the inflammable mixture and caused the explosion.
   At the time the explosion occurred the plaintiff was not at
   work near the machine, but stood outside the building where
   it was located and fifty feet therefrom. He was not injured
   by the thumb-nuts falling upon him nor by coming in con-
   tact with the machine. *Held,* that the provisions of the fac-
   tory act (Gen. Stat. 1909, § 4679) requiring machinery to be
   properly and safely guarded for the purpose of preventing or
   avoiding injury to employees in factories has no application,
   and that plaintiff could not maintain an action under the
   statute.

Appeal from Cherokee district court; EDWARD E. SAPP, judge. Opinion filed November 14, 1914. Affirmed.

*Charles Stephens, C. A. McNeill,* and *E. V. McNeill,* all of Columbus, for the appellant.

*A. H. Skidmore,* and *S. L. Walker,* both of Columbus, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The action in the district court was to recover for injuries which the plaintiff sustained in an explosion at the powder mills of the defendant company where he was employed. The court sustained a demurrer to his evidence and rendered judgment against him, from which he appeals.

In a voluminous petition plaintiff set out the manner in which the defendant operated its powder mills, and alleged that the explosive materials used in making the powder were first mixed in four wheel mills; that the mixture was then conveyed in bulk by means of push cars and cars drawn by horses on grit-covered tramways running to press mills, where it was pressed into cakes about one inch thick; that these cakes were then conveyed in a similar manner over other tracks to what is known as the "corning" mills, where the cakes were crushed through four sets of rolls, and from the last set of rolls carried by an elevator to a revolving screen; that the smaller particles or screenings constituted what is commonly known as "back dirt," which was carried back to the press mills, again mixed with other unpressed material, and finally returned to the corning mills and reground through the rolls for the purpose of having all grains of powder substantially the same size; that the revolving screen in the north corning mill, where the explosion occurred, was made up of sections of screens, and that some of the buttons or

19—93 KAN.

bolts which fastened the screens, and also metallic but-
terfly thumb-nuts two or three inches long, attached
to the wooden bolts, were loose, and would sometimes
drop into the back dirt, and in the regular routine be
carried to the press mills, pressed into cakes, and car-
ried again to the north corning mill, where they would
be fed into the rolls, thereby causing a friction and
creating sufficient heat and sparks to ignite the danger-
ous explosives then being crushed.

The accident occurred on March 30, 1912, and the
petition alleged that on the afternoon of the day before,
when the mills had stopped for the day, one Durkee,
foreman and inspector, and Robert Carson, the repair
man of the defendant, changed a section of screens in
the north corning mill, and that some of the butterfly
thumb-nuts were loose, and through the carelessness
and negligence of the carpenter and repair man,
dropped into the back dirt and were afterwards re-
pressed with other screenings and returned to the north
corning mill, where they caught and hung in the rolls
and caused the explosion which completely destroyed
the north corning mill, and seriously and permanently
injured the plaintiff.    The petition further alleged a
failure to provide a safe place for plaintiff to work, in
that defendant carelessly and negligently managed and
operated its plant in several particulars; that it failed
to employ suitable, competent and careful agents and
servants to look after the details in the construction,
management and inspection, and in the repair of the
tramways, equipments and grounds in the handling of
explosive materials; that it well knew that particles of
grit became extremely dangerous when any portion of
the same became mixed with the raw materials; and
that on the morning of March 30, and before the ex-
plosion, at least one of the cakes of powder which were
being fed into the rolls of the north corning mill con-
tained butterfly thumb-nuts, and all of the cakes con-
tained many particles of cinders, sulphur, sometimes

called sulphur rock, iron, flint, sand and other grit, and also nails and metallic substances, the exact size and descriptions of any of which the plaintiff alleged he was unable to state; that these foreign substances created heat and sparks in the rolls and caused the explosion. The petition further charged the defendant with negligence in failing to equip the press mills with necessary screens and appliances to prevent foreign substances and grit from going into the machinery with the inflammable and explosive material.

There was a failure of proof respecting the allegations of negligence on the part of the foreman and the carpenter. No evidence was offered to show that they or any other person had made any change in the screens on the day before the accident. There was no proof that the explosion was caused by a thumb-nut being in between the rolls and producing friction, except proof of circumstances tending to show the possibility of such a thing. Counsel appear unwilling to rest their case alone upon the claim that the evidence showed that the cause of the explosion was that the foreman and the repair man changed the sections of screens on the revolving reel on the day before the accident, and in doing so carelessly failed to fasten securely some of the butterfly thumb-nuts, and that some of the thumb-nuts were too loose, and by reason thereof one of them dropped off and found its way through the back dirt to the press mills and was fed back to the corning mill, caught in the rolls and produced a spark, where it ignited the powder. On the contrary, it is urged that the explosion may have been caused by any one or more of the acts of negligence alleged in the petition; the failure to provide screens at the press mill; failure to require the men to change their shoes before coming into the room where the explosion occurred; failure properly to inspect the machinery; failure to enforce proper rules; failure to tack a wire screen over the mouth of the hopper in the corning mill; failure to re-

quire the mules and horses to walk upon the narrow path on the trams, and the failure to employ competent agents and servants in the construction, management and operation of the plant. But this contention overlooks the rule often declared, that "a fact is not proved by circumstances which are merely consistent with its existence." (*Duncan v. Railway Co.*, 82 Kan. 230, 233, 108 Pac. 101, and cases cited in the opinion.)

The difficulty with the plaintiff's case is that there was no proof showing that any foreign substance likely to create heat and sparks in the rolls was present in the mixturê or that it caused the explosion; nor was there evidence to show that the explosion was caused by the failure of defendant to enforce proper rules. If it be conceded that the plaintiff showed that for any one òr more of the alleged reasons he was not furnished a safe place to work, still the evidence fails to show that the explosion was caused by any failure or neglect of duty on the part of the defendant. The defendant may have been at fault in failing to furnish the plaintiff a reasonably safe place to work, but unless plaintiff's injuries were caused by such failure, he can not recover on that ground. As was said in *Duncan v. Railway Co.*, supra:

"It (the death of Duncan) may have been caused in the manner claimed by the plaintiff. Possibly one conjecture is as reasonable as another, but the evidence does not reveal the cause of his fall. In the absence of such evidence there can be no recovery." (p. 233.)

See, also, another case with the same title, *Duncan v. Railway Co.*, 86 Kan. 112, 119 Pac. 356, where it was said that "While the jury were warranted in drawing fair and reasonable inference from the facts and conditions shown, it was only from those shown and not from those imagined or inferred that such inference.could rightfully be drawn." (p. 123.) And see the following cases cited in the opinion: *Railway Co. v. Rhoades*, 64 Kan. 553, 68 Pac. 58; *Hart v. Railroad Co.*, 80 Kan. 699, 102 Pac. 1101; *Brown v. Railroad*

*Co.,* 81 Kan. 701, 106 Pac. 1001, which are against the contention of the plaintiff in the case at bar. Among the cases cited by plaintiff is *Luengene v. Power Co.,* 86 Kan. 866, 122 Pac. 1032, where a person was injured by a gas explosion, and sued the company engaged in the sale and distribution of natural gas. It was held that he was not bound to show by what means the gas was ignited. That case is easily distinguishable. The injuries were caused by the explosion of gas in the basement of a building. The petition made no attempt to allege what caused the gas to explode, but alleged that the gas company was negligent in failing to keep and maintain its mains and pipe connections in proper condition, and in permitting gas to escape into manholes and trenches and into a telephone conduit to the basement where the explosion occurred. The plaintiff proved these facts; and while no evidence was offered of the cause of the explosion, a recovery was allowed because of defendant's negligence in carelessly permitting such a highly explosive agency as natural gas to escape and accumulate in a place where it might reasonably be expected an explosion would result from some cause or another. A quite different situation was presented in *Gas Co. v. Dabney,* 79 Kan. 820, 101 Pac. 488, where the gas escaped from an unfinished well into the open air and exploded in the nighttime. There was no evidence to show what caused the explosion and it was held that plaintiff for that reason was not entitled to recover. Allowing the gas to escape into the open air is manifestly a different character of negligence from allowing it to escape and accumulate in a confined place where it might reasonably be expected an explosion would result.

Plaintiff's argument in the briefs is largely based upon the doctrine of *res ipsa loquitur,* and *Judson v. Giant Powder Co.,* 107 Cal. 549, 40 Pac. 1020, 48 Am. St. Rep. 146, is cited in support of the proposition that the explosion of a powder mill raises a presumption of

negligence. That was a case where an explosion of nitroglycerin in process of manufacture of dynamite in the defendant's powder factory caused the destruction of plaintiff's property situated near. It was held that proof of an explosion raises a presumption of negligence sufficient to establish a *prima facie* case. The principle of *res ipsa loquitur* controlled, and the decisions cited in the opinion are for the most part in support of that principle. Among those cited are cases where the explosion of the boiler of a steamboat has been held *prima facie* evidence of negligence in favor of a passenger; and what are sometimes referred to as "the chisel cases," like *Dixon v. Pluns*, 98 Cal. 384, 33 Pac. 268, 34 Am. St. Rep. 180, where a workman upon a building dropped a chisel which fell and injured a girl while passing on a street below. The opinion cites other cases where persons passing along buildings in process of construction were injured by workmen dropping tools upon them, and negligence was inferred from the fact. Manifestly, the person injured in such a case was not obliged either to allege or prove negligence upon the part of the workman, and the rule of *res ipsa loquitur* applied; but that doctrine has no application to the present case, for two reasons: First, the plaintiff pleaded specifically the causes of the explosion and must prove the acts of negligence which he alleged, and that such negligence was the proximate cause of his injuries. He can not be allowed to make a *prima facie* case relying upon the doctrine that the accident speaks for itself. (*Root v. Packing Co.*, 88 Kan. 413, 129 Pac. 147.) The opinion in that case quotes with approval the following language from *Orcutt v. Century Bldg. Co.*, 201 Mo. 424, 99 S. W. 1062:

"If the plaintiff possesses knowledge of the facts, and is able to plead them specifically and in detail, the reason for the rule disappears and with it the rule itself." (p. 443.)

Second, the occurrence of the explosion is not of itself sufficient upon which to base a presumption of negligence of the defendant company in favor of an injured employee. (*K. P. Railway Co. v. Salmon, Adm'x,* 11 Kan. 83; *A. T. & S. F. Rld. Co. v. Wagner,* 33 Kan. 660, 7 Pac. 204; *Railway Co. v. Taylor,* 60 Kan. 758, 57 Pac. 973; *Lane v. Railway Co.,* 64 Kan. 755, 68 Pac. 626; *Root v. Packing Co.,* supra.) "A finding of negligence can not rest upon mere conjecture." (*Railroad Co. v. Tindall,* 57 Kan. 719, 723, 48 Pac. 12.)

In the briefs it is contended that the facts shown in the evidence were sufficient to establish a cause of action under the common law without any statutory aid, but in addition thereto it is argued that a cause of action was shown under the factory act. The provision of the factory act upon which the plaintiff relies requires that "all vats, pans, saws, planers, cog gearing, belting, shafting, set-screws and machinery of every description used in a manufacturing establishment shall, where practicable, be properly and safely guarded, for the purpose of preventing or avoiding the death of or injury to the persons employed or laboring in any such establishment." (Gen. Stat. 1909, § 4679.) It is said that the evidence shows that the revolving screen was so badly worn inside and had been in that condition such a length of time that the bolts would slip and permit the butterfly thumb-nuts to be released and drop out while the mill was in motion. We fail to see how any provision of the factory act can affect the cause of action here. The purpose of the act is to require the guarding of dangerous machinery in order to prevent injury to employees operating the same, or to those employees whose duties may require them to come near it. Thus, guards are required to prevent an employee from being injured by his limbs or body coming in contact with moving belts, cog gearing, saws, planers, and like dangerous machinery. The act likewise requires guardrails or appliances to protect

employees from the danger of falling into vats, pans, elevator openings, and things of that nature. There is no provision which requires machinery to be kept in repair, except so far as the neglect to do that would amount to a failure to comply with some of the specific requirements of the act. When the explosion occurred the plaintiff, according to his own testimony, was not even in the building where the alleged defective screen was, but stood outside fifty feet from the corning mill. He was not employed in operating the machine; he was not injured by coming in contact with the alleged defective screen, but by an explosion of the mill. Moreover, the factory act (Laws, 1903, ch. 356, § 6, Gen. Stat. 1909, § 4681) required the plaintiff, in order to establish a cause of action under it, to prove that his injuries resulted in consequence of the failure of the defendant to comply with the provisions of the act, or that such failure directly contributed to the injury.

The case could be submitted to the jury only for the purpose of permitting them to determine by speculation and conjecture the cause of the explosion. The trial court rightly sustained the demurrer, and the judgment must be affirmed.