No. 19,947.

AMELIA RODGERS, *Appellant*, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY et al., *Appellees*.

SYLLABUS BY THE COURT.

RAILROADS—*Personal Injuries—Cause of Accident Unknown—No Damages Without Proof of Negligence*. The plaintiff alleged that her husband was a passenger on one of defendant's trains and that upon arrival at his destination he undertook to walk alongside the train, and while walking past a water tank he slipped upon ice which had been negligently allowed to accumulate there, fell under the wheels of the train and was killed. His lifeless body was found on one side of the track and his severed legs between the rails of the track. He had expressed a purpose to come to the place where he was killed, on one

of defendant's trains. No one saw him upon the train, nor leaving it; nor was there any evidence that he had purchased a ticket for passage upon the train. No proof was produced as to how he happened to be killed, outside of the circumstances of the location of his body and the conditions existing there. *Held,* that the evidence in the case, only a part of which has been stated, was not sufficient to show that the defendant failed to perform any duty which it owed to him and that his death was the proximate result of defendant's negligence.

Appeal from Riley district court; SAM KIMBLE, judge. Opinion filed February 12, 1916. Affirmed.

*W. S. Roark,* of Junction City, for the appellant.

*Paul E. Walker,* and *Luther Burns,* both of Topeka, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: Amelia Rodgers brought this action against the Chicago, Rock Island & Pacific Railway Company to recover the sum of $10,000 as damages for the death of her husband, John W. Rodgers, on or about the 22d day of December, 1911, which it was alleged was caused by the negligence of the company.

In her petition she alleged that Rodgers was a passenger on an eastbound train of the defendant, which arrived at Manhattan on the morning of December 22, 1911, and that a water tank near the west end of the station platform was permitted to be in a leaky and defective condition, with the result that ice accumulated in the trough of the tank at the side of the railroad, and that Rodgers, who alighted from the train before daylight and when the station platform was not properly lighted, passed along the side of the train, slipped on this dangerous accumulation of ice, fell under the train and was killed. The answer of the defendant was a denial of the averments of the petition and a charge of contributory negligence. A trial was had with a jury, and after plaintiff had introduced her evidence a demurrer to the same was sustained and judgment given for the defendant.

From the testimony of plaintiff it appeared that Rodgers was an able-bodied man of good habits, about fifty years old and a resident of Manhattan. The day before the casualty he

was at Clifton, a station about fifty-two miles west of Manhattan on defendant's railroad. The evening before his death he expressed a purpose to return to Manhattan on a coming train, and early the next morning his dead body was discovered at Manhattan between the west end of the station platform and the water tank of the company. The body was north of the rails, and his legs, which were severed below the knees, were lying between the rails of the track, about four or five feet from the drip trough of the water tank, which was thickly coated with ice. The body lay on his traveling bag and did not appear to have been dragged.

There are two railroads on which Rodgers might have traveled from Clifton to Manhattan, but the shorter and more direct route and the one he had expressed a purpose to take is defendant's railroad. There is no proof that he purchased a ticket at defendant's station, and no witness saw him enter the train at Clifton. Two of defendant's trains were scheduled to pass east between Clifton and Manhattan that night, one due at Manhattan at 1 a. m. and the other at 5:25 a. m., but there is nothing to show that Rodgers was seen upon either of them, nor was he seen to leave any of defendant's trains.

The station is near Fourth street, which runs north and south, and steps leading to the station from that street, as well as from one on the north, are provided. West of the station there are some steps leading from the street on the north side, but most of the people entered and left over the steps near the east end of the station on Fourth street. The station platform extends 217 feet west of the station, and the trough of the water tank is located between 9 and 10 feet west of the platform, and 50 feet beyond the platform is Fifth street. Persons on eastbound trains sometimes alighted west of the tank, and occasionally some of them walked between the track and the tank to the west end of the platform, although there is a large sign placed opposite the water tank with the warning: "No Thoroughfare. Walking on or across tracks is strictly prohibited." The body of Rodgers was found five feet from the platform, or about half way between it and the trough of the water tank, but beyond the location of his body and an expressed purpose to return home on that night nothing indicating the cause of his death was shown. We think the evidence produced failed

Rodgers v. Railway Co.

to make a *prima facie* showing that the death of Rodgers resulted from the negligence of the defendant. Negligence can not be rested upon mere presumption, nor can a finding of negligence ever be made without evidence. No one is required to pay damages until it has been shown that he is in fault. In the absence of evidence the presumption ·is that the defendant is free from negligence. (*Mo. P. Rly. Co. v. Haley, Adm'r, &c.,* 25 Kan. 35; *Railroad Co. v. Tindall,* 57 Kan. 719, 48 Pac. 12; *Byland v. Powder Co.,* 93 Kan. 288, 144 Pac. 251.)

In this case it was not enough to prove that Rodgers was found lifeless upon the track of the defendant's railroad, nor even that there is a strong possibility that a train of the defendant ran over and killed him. It devolved on the plaintiff to show by competent evidence that he was killed by the action of the defendant; that the company did something which should not have been done; or omitted to do something in the discharge of its duty towards him which, under the circumstances, should have been done; and further, that his injury and death resulted from such failure of the defendant. These findings can not be made unless there is either direct or circumstantial evidence to prove the essential facts of negligence on the part of the defendant and that such negligence caused the deplorable death of Rodgers. Neither fact can be based upon mere possibilities or surmises, nor even upon circumstances which are merely consistent with such fact where they are open to different inferences. (*Carruthers v. C. R. I. & P. Rly. Co.,* 55 Kan. 600, 40 Pac. 915; *Duncan v. Railway Co.,* 82 Kan. 230, 108 Pac. 101.)

Now, it has not been proven that Rodgers was a passenger on defendant's train on the night of his death. He contemplated taking the train, but, as we have seen, no witness saw him board it, upon it, or leaving it. The plaintiff's theory or inference is that he was a passenger; that he alighted from the train when he reached Manhattan, and as he walked alongside the train he slipped on the icy trough of the tank, fell under the train and was killed. A possibility suggested by the defendant is that he came to Manhattan on the Union Pacific Railroad, which has a longer line from Clifton to Manhattan, and in going to his home went upon the track of the

21—97 KAN.

defendant and was struck by one of defendant's trains at the place where his body was found. This supposition, however, like others suggested in the case, is not founded on sufficient evidence. If we assume, as the trial court appears to have done, that he was in fact a passenger on one of defendant's trains, the evidence is still lacking as to how his death occurred and whether the defendant neglected any duty which it owed to him. It might be supposed, as plaintiff has done, that he alighted from the train at the station, and as he walked west along the side of the train, while it was in motion, he lost his footing on the ice and was thrown under the train. Other surmises may be made as suggested in the argument. He may have undertaken to drop from the train before it had stopped at the station, in an attempt to shorten his journey home, and have fallen under the wheels. Whether he was traveling east towards the platform, or whether he alighted on the platform and was traveling west, can not be determined from any evidence in the case. If it be assumed that he did not attempt to leave the train until it stopped and that he alighted on the platform, another theory is suggested, that after the train had passed he started west and across the track on his way home and was struck by a second train of the defendant. This, too, is conjectural. Another suggestion made by the defendant is that, as he sometimes had fainting spells, he may have fallen on the track and was dead when a train ran over him. There may be more probability in some of the suggested theories than in others, but all of them are mere conjectures without a sufficient basis to warrant the inference that the defendant was guilty of negligence which occasioned the fatal accident.

The case falls fairly within a number of former decisions in which it was held that there was not sufficient proof of culpable negligence or liability. In *Railway Co. v. Young*, 57 Kan. 168, 45 Pac. 580, a child who was playing near a track had his hand cut off by a moving train. In an action by his parents it was contended that the railway company had failed to have a proper lookout, or to take necessary precautions for the safety of the boy and other children who were playing near the track. No one saw the accident in that instance. Upon the

Rodgers v. Railway Co.

assumption that the railroad company should have had a look-out on the moving cars, it was said:

"It is not enough that the company may have failed to take necessary precautions in moving the train, but before there can be a recovery it must show that the boy was hurt in consequence of such failure. How he was hurt and whether due care would have avoided the casualty rest upon conjecture rather than upon established facts, and we conclude that the testimony is insufficient to support the verdict, and that a new trial should have been granted." (p. 171.)

In *Hart v. Railroad Co.*, 80 Kan. 699, 102 Pac. 1101, a passenger in good health and accustomed to traveling on railroads appears to have fallen from the train, as his mangled and life-less body was found on the side of the track the day after he was seen on the train, near a station on defendant's railroad. It was a vestibuled train, and the custom was to keep the doors closed between stations. The plaintiff insisted that as deceased was in possession of his faculties, it could not be inferred that he committed suicide or failed to take proper care of himself, and that the only way to account for his death was the negligence of the railway company. It was said that the passenger may have been too warm and opened a vestibule in order to get fresh air, but it was added that this was speculation, and the finding of negligence without testimony as to how the door was opened and how the accident occurred could not be sustained.

Some of the features of the case of *Brown v. Railroad Co.*, 81 Kan. 701, 106 Pac. 1001, are similar to those of the present one. A person who had been riding on a passenger train was found dead about three hundred feet from a station of the railroad company. His dead body was found on the side of the track and his dissevered legs between the rails. It was a vestibuled train and it was supposed that he or some one else had opened the vestibule before the train arrived at the station. Although, indulging the presumption that the deceased was in the possession of his usual faculties, and in the exercise of due care for his own safety, it was decided that in the absence of evidence as to who had opened the vestibule or how the deceased happened to fall under the train, a finding that his death occurred through the fault of the railroad company was not justified.

It is insisted that the watering of locomotives through a water tank is not the best method, but that it can better be done through a crane, thereby avoiding accumulations of water or ice near the track. It may be that the presence of ice at that place was a lack of due care as to some persons, but since it is not shown that the ice near the track was the proximate cause of the accident, which may have resulted from other causes, it is unneccessary to consider whether the use of a tank instead of a crane was negligence. The plaintiff alleged that the accident and death were the proximate results of the defendant's negligence. It devolved upon her to produce evidence accounting for the accident and death of Rodgers; also that there was a breach of the company's duty towards him, and that his death was due to its fault. Unless substantial proof of these elements is produced, the plaintiff can not recover. If it be assumed that Rodgers was a passenger on defendant's train, it must still be presumed that he alighted with care and did not undertake to leave the train before it had stopped, and fell between the wheels when trying to alight. And then it must be presumed that he undertook to walk towards or away from the station over the icy place near the track while that train or another one was passing the station, and without any want of care on his part. That would be building one presumption upon another—a process which does not afford a basis for an inference of negligence. (*Duncan v. Railway Co.*, 82 Kan. 230, 108 Pac. 101; *Duncan v. Railway Co.*, 86 Kan. 112, 119 Pac. 356; *Byland v. Powder Co.*, 93 Kan. 288, 144 Pac. 251.) We may give full force to the presumption of care on the part of Rodgers, but this presumption furnishes no basis for inferring negligence on the part of the defendant. Until proof to the contrary is introduced, the defendant is entitled to the presumption that it was exercising care and performing its duty toward the deceased. (*Looney v. Metropolitan Railroad Co.*, 200 U. S. 480, 26 Sup. Ct. Rep. 303, 50 L. Ed. 564.) Inference of negligence may be based on circumstances, but the circumstances must be drawn from premises that are reasonably certain and point clearly to the negligence asserted. In this respect the testimony of the plaintiff fails. As was said in *Railroad Co. v. Aderhold*, 58 Kan. 293, 49 Pac. 83:

"The accident may be accounted for in several ways, and other and

more plausible theories of the collision may be suggested; but liability can not be fixed on a bare guess, nor can a verdict rest on mere conjecture." (p. 298.)

Being satisfied that the evidence does not establish *prima facie* that the defendant was guilty of negligence and that the casualty was the result of its negligence, the judgment of the trial court is affirmed.